**IN THE COURT OF APPEALS OF IOWA**

No. 14-1396
Filed December 24, 2014

**IN THE INTEREST OF M.A.B.-C., AND C.A.B. Jr.,**
**Minor Children,**

**C.B., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Pottawattamie County, Craig M. Dreismeier, District Associate Judge.

A mother appeals from the termination of her parental rights. **AFFIRMED.**

Roberta J. Megel of the State Public Defender's Office, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, Matthew Wilbur, County Attorney, and Dawn Landon, Assistant County Attorney, for appellee State.

Marti Nerenstone, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

A mother appeals the termination of her parental rights to her children C.A.B., Jr., born in 2001, and M.A.B.-C., born in 2006. She contends the State failed to (I) make reasonable efforts for reunifying her with her children and (II) prove grounds for termination of her parental rights. Reviewing her claims de novo, we affirm. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

### I. Reasonable Efforts.

Prior to termination of parental rights, the Iowa Department of Human Services (DHS) must make reasonable efforts to reunite the parent and child. Although the State has an obligation to provide reasonable services, the parent has an obligation to demand different or additional services the parent may require prior to the termination hearing. *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). If a parent does not request additional services at the appropriate time, the argument that the DHS did not make reasonable efforts is waived, and the parent may not later challenge it in the termination proceeding. *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).

The mother does not identify on appeal what additional or alternative services would have increased her parenting skills. Furthermore, nothing in the record shows the mother requested other, different, or additional services prior to the termination hearing. Therefore, "the issue of whether services were adequate has not been preserved for appellate review." *See S.R.*, 600 N.W.2d at 65.

Even so, the record evidences the mother was offered and received numerous services since the date of her children's removal from her care in

August 2012, including family safety, risk and permanency services; drug testing; mental health and substance abuse evaluations; and mental health and substance abuse treatment, among other things. It is clear the State met its burden of providing reasonable services to the mother.

## II. Grounds for Termination.

The mother's parental rights were terminated pursuant to Iowa Code subsection 232.116(1) paragraphs (d), (f), and (i) (2014). We need only find termination proper under one ground to affirm. *In re R.R.K.*, 544 N.W.2d 274, 276 (Iowa Ct. App. 1995). We choose to focus our attention on subsection 232.116(1) paragraph (f), which provides termination is appropriate where:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance [(CINA)] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother challenges the court's finding that the children could not be returned to her care at the time of the termination hearing. Therefore, at issue is whether the State presented clear and convincing evidence the children could not be returned to the mother's care pursuant to section 232.102. *See id.* § 232.116(1)(f)(4). The State meets its burden to prove this element if it presents clear and convincing evidence "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a [CINA]." *See id.* § 232.102(5)(2); *see also In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). Iowa

Code subsection 232.2(6) paragraphs (a) through (q) set forth the definitional grounds of a CINA, and clear and convincing evidence of any one of the types of harm set out in these paragraphs is sufficient to support termination. *See A.M.S.*, 419 N.W.2d at 725.

Paragraph (c) provides that a child is a CINA if the child "has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." Iowa Code § 232.2(6)(b)(2). "Harmful effects" relate to "the physical, mental or social welfare of a child." *In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014). A parent's active methamphetamine addiction by itself can result in 'harmful effects' to the child as defined in Iowa Code section 232.2(6)(c)(2). *See id.* at 37, 42; *see also In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (noting "an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children").

Despite the offer and receipt of services since August 2012, the mother's mental health and use of illegal substances were still issues at the time of the termination hearing in July 2014. The mother had progressed to a thirty-day trial home visit with the children in April 2014, but, two-days short of finishing the trial period, she ended the trial and left the children with their aunt. The mother had stopped taking her medication, and she reported she was very emotional and depressed. She instigated a text-message exchange with one of the children after leaving them with their aunt, telling the child she was sorry she "was such a disappointment" and hoped the child would marry "a rich man or never have kids." The child, clearly acting the adult, replied to the mother, "And I hope you stop being so insane and willing to give us up," to which the mother

replied: "Such love you truly do belong there you act just like them hope [your uncle] gives you everything you ask for why would I want such disrespectful children I'm apparently not good enough bye."

The mother then walked away from the case for a few weeks, having no contact with the case providers or the children. She ultimately re-engaged but tested positive for methamphetamine in June, though she denied use and testified she heard that medications she was taking could cause a false-positive, such as oxycodone. However, the DHS's case worker testified that oxycodone does not test positive for methamphetamine.

The mother admitted her text exchange with her child was inappropriate, but she chalked it up to her "emotions." Yet, she was the adult who chose to stop taking her medication. At the termination hearing, she minimized her behavior and complained that she was the hurt party after her children were "snatched" following her unsuccessful home-trial visitation, though she was the person who ended the trial and walked away. Though she testified she was taking medication again, she also testified she had changed mental health providers again and had an appointment with her new provider that day.

It is clear that despite not quite two years of involvement with services and the DHS, the mother had not addressed her mental health and substance abuse issues by the time of the termination hearing. The mother's continuing and non-resolved mental health and substance abuse issues evidenced her children had suffered or were imminently likely to suffer harmful effects concerning their physical, mental, and social welfare as a result of her failure to exercise a reasonable degree of care in supervising her children. We therefore find the

State proved by clear and convincing evidence that at the time of the termination hearing, the mother's children still required protection from some harm that would justify their adjudication as a CINA, and thus the children could not be returned to the mother's care pursuant to section 232.102.   *See id.* § 232.116(1)(f)(4). Consequently, we agree with the juvenile court that the State proved the ground for termination of her parental rights under Iowa Code section 232.116(1)(f). Accordingly, we affirm the termination of her parental rights.

**AFFIRMED.**